UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
:
SHEILA L. BISHOP, :
:
                       Plaintiff, :        08 Civ. 6759 (TPG)
:
1085 WARBURTON AVENUE OWNERS. : **OPINION**
INC., on behalf of the Corporation and :
Shareholders, :
            Intervenor Plaintiff, :
:
         – against – :
:
GREYSTONE PROPERTIES, LLC., :
VELOCITY AT GREYSTONE, LLC., ERIK :
KAISER, KENDRA PISARRA, GEORGE :
YERRALL, STEPHEN DENARDO, CRWB, :
LLC as assignee of WRIGHTWOOD :
CAPITAL LENDER, LLC., JAMES :
VENERUSO, as Court Appointed :
Receiver, REMI RIVER OAK LLC., RIVER :
OAK, LLC., REMI GREYSTONE LLC., :
ASHLEY REMI, INC., ARICS, INC., REMI :
CONSTRUCTION, P. B. MARKOVIC, :
Individually and as employee of REMI :
CONSTRUCTION, P. B. MARKOVIC :
PROJECT MANAGEMENT, CITY OF :
YONKERS, BOB CIAMARRA, JAMES :
HANNIGAN and MATT FOLEY in their :
official capacity as Employees of the City :
of Yonkers Department Of Housing and :
Buildings, JOSEPH MORAN in his :
Official capacity as Commissioner of the :
Department of Engineering of the City of :
Yonkers and JOHN MEYER in his official :
Capacity as Commissioner of the :
Department Of Housing and Buildings of :
the City of Yonkers, :
:
                       Defendants. :
------------------------------------------------x

This is an action brought by plaintiff, Sheila L. Bishop, pursuant to 42 U.S.C. § 1983 to recover compensatory and punitive damages for the deprivation of her constitutional rights by the City of Yonkers and its employees ("City defendants").  Bishop also brings state law claims against Yonkers, its employees, and other private actors.  Intervenor plaintiff, 1085 Warburton Avenue Owners, Inc. ("the Co-op"), asserts similar claims against the same defendants as Bishop, and adds one additional city official as well as certain private actors in its § 1983 claim.

The complaints stem from ongoing problems at a high-rise construction site ("the Development") located between Bishop's and the Co-op's properties.

Defendants move pursuant to Fed. R. Civ. Pro. 12(b)(1) and 12(b)(6) to dismiss both the amended complaint and the intervenor plaintiff complaint.  Some defendants have also moved pursuant 42 U.S.C. § 1988 to recover attorneys' fees from the Co-op.

Because plaintiffs do not allege a violation of a recognized constitutional or statutory right, their 42 U.S.C. § 1983 claims must be dismissed.  Without that basis of federal jurisdiction, plaintiffs' remaining claims are dismissed for lack of subject matter jurisdiction.  Defendants' motion against the Co-op for attorneys' fees is denied.

**THE COMPLAINTS**

The following facts relate only to the 42 U.S.C. § 1983 claims against the City defendants, are taken from the amended and intervenor complaints, and, for the purposes of these motions, are assumed to be true.

<u>The Parties</u>

Bishop is a resident of New York who owns and previously resided at a residence located at 1063 Warburton Avenue in Yonkers, New York. Bishop's residence is adjacent to the south side of the Development.

The Co-op is a residential cooperative made up of members who own apartments in a building located at 1085 Warburton Avenue in Yonkers. The Co-op's building is adjacent to the north side of the Development.

Yonkers is a municipal corporation organized under the laws of the State of New York.

Defendants Bob Ciamara, James Hannigan, Matt Foley, and John Meyer are employees of Yonkers' Department of Housing and Building. Joseph Moran is an employee of the Yonkers' Department of Engineering.

<u>Jurisdiction</u>

Both Bishop and the Co-op claim federal subject-matter jurisdiction under 28 U.S.C. § 1331 via their federal claims under 42

U.S.C. § 1983. Both also claim 28 U.S.C. § 1367 supplemental jurisdiction over their remaining claims.

Factual Allegations

This case centers on an ongoing development project at 1077 Warburton Avenue in Yonkers. Warburton Avenue runs in a north-south direction just to the east of the Hudson River. Just to the west of the portion of Warburton Avenue where the Development is located, the terrain slopes sharply downward to the Hudson River. Bishop is the Development's southern neighbor and the Co-op building is the Development's northern neighbor. Both Bishop's residence and the Co-op building are built into the slope rising up from the Hudson.

Sometime prior to May 5, 2004, Yonkers approved a permit for Greystone Properties LLC, a defendant in this case, to build an apartment building between Bishop's house and the Co-op building. The plans for the construction called for a large excavation into the slope with steel sheeting to support the earth to be placed on the east side along Warburton Avenue, to the south side along Bishop's property line, and to the north side along the Co-op's property line. These plans were approved by Yonkers employees, who are defendants in this case, pursuant to § 56-23B of the Yonkers City Code, which provides that the Department of Housing and Buildings "shall approve or reject any application or plan . . . pursuant to the provisions of this chapter." It is

alleged that the City defendants represented to Bishop and the Co-op that the planned excavation procedure was safe and that Yonkers would provide for inspections to ensure the safety of the site.  Section 56-56 of the City Code deals with excavation, and provides that if a permit holder is neglecting to properly protect any structure from injury, the Department of Housing and Buildings "may enter upon the premises and order such labor to be performed."  Section 42-154 provides that if a permit-holder is operating in an unsafe manner, the Commissioner of Housing and Buildings "may issue a stop-work order."

According to the complaint, since the time the construction was approved by Yonkers, the Development has not progressed much further than an unsightly hole in the ground.  This hole in the ground has, however, caused significant distress for Bishop and the Co-op residents.  It is alleged that by early 2005, the steel sheeting holding up the earthen foundation around the Development had failed and Bishop's residence began to sink into this hole in the ground, causing the residence's foundation and walls to crack and making Bishop's residence no longer safe to occupy.

The following is claimed as to the Co-op to the north.  While it is still inhabitable, the Co-op has nonetheless suffered greatly from the quagmire to its south.  Repeated collapses of the Development's foundation and repeated trespasses by heavy construction equipment have damaged the Co-op's property.  The air in the building has been

spoiled by unidentified airborne particulates released by the ongoing construction. The public areas surrounding the Co-op have become unsafe. In sum, the living conditions of the residents of the Co-op have been greatly compromised.

All of these problems could have been prevented, it is alleged, if the City defendants had fulfilled their basic obligations to the residents of the city. Instead, the City defendants made the intentional misrepresentations noted above regarding the impact of the Development on its neighbors. The City defendants made these misrepresentations, it is alleged, in order to clear the way for developers to begin construction without the delay of revising the site plans, a revision that would have prevented damage to the Development's neighbors' health, safety, quality of life, and property rights. Then, once construction had begun, the City defendants failed to provide the necessary supervision at the site; failed to enforce health, safety, and environmental laws and regulations despite complaints; and failed, despite complaints, to require the developers to address ongoing problems. Instead of addressing these problems, the City defendants continued to issue and renew permits for the Development. It is alleged that these decisions were all the result of policies put in place by the City defendants with the benefit of the developers in mind and with deliberate indifference to the harm that would be caused to the city's residents, such as Bishop and the residents of the Co-op.

The Co-op, in its intervenor complaint, additionally alleges that the City defendants were improperly motivated to adopt these policies by the desire to avoid interference in the city's activities by this court.  The city of Yonkers had recently settled a longstanding civil rights suit regarding racial discrimination in housing.  The Development contains a small affordable housing component and Yonkers feared that if the project was delayed, the federal case would be reopened.  The Co-op alleges that the City defendants chose to sacrifice the rights of some of its residents in order to avoid continued federal court intrusion.

Bishop makes no allegations as to the motivation underlying the decisions made by Yonkers or its employees.

## DISCUSSION

The constitutional provision relied on by Bishop and the Co-op is the Due Process Clause of the Fourteenth Amendment.  Presumably it is their property interest with respect to which they claim they were denied due process.

Ms. Bishop and the Co-op allege, in short, that each had a recognizable interest in the City defendants performing their duties competently.  This allegation was summarized in Bishop's opposition to the motion to dismiss with the contention that the City defendants had "an affirmative duty to protect adjoining land owners to the [Development] . . . while excavation was underway."  The allegation is

echoed by the Co-op in complaining that the City defendants put the interests of developers above those of residents in not providing appropriate oversight of the excavation.

Another theory suggested by plaintiffs' allegations in their respective complaints is that a due process violation may exist in these circumstances under the "state-created danger" doctrine.  See Pena v. DePrisco, 432 F.3d 98 (2d Cir. 2005).  Bishop hints at this theory in alleging that "the adoption of certain policies and the passage of certain resolutions" resulted in the damage to her house.  The Co-op is more explicit, alleging defendants, both private and public, "knowingly, recklessly, and wrongfully have acted jointly and severally to violate plaintiff's rights. . . ."

The City defendants in their motion to dismiss argue, *inter alia*, that any action or inaction taken by them entailed discretionary matters involved in carrying on local government, and, therefore, Bishop and the Co-op cannot show any entitlement to intervention on their behalf.  Without such an entitlement, it is argued, there can be no constitutional violation.

Bishop responds primarily by attempting to distinguish precedents relied upon by the City defendants and insisting that discovery is needed before any determination is made as to the existence of a right or privilege.  The Co-op responds that the City defendants have

misunderstood its complaint. The Co-op is not alleging an entitlement to intervention, but is alleging, *inter alia*, that the City defendants deprived the Co-op of its rights by willfully refusing to fulfill their responsibilities with regard to the safety of the development. The City defendants reply by arguing that the Co-op is trying to make the issue broader than it actually is. The issue, at heart, they argue, is dissatisfaction with the discretionary choices made by the City defendants.

Legal Standard

In general, to survive a motion to dismiss under Rule 12(b)(6), a complaint must plead sufficient facts to state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

More specifically, a due process claim under § 1983 must plausibly allege the deprivation of a constitutionally protected interest. See Christ Gatzonis Elec. Contractor, Inc. v. New York City Sch. Constr. Auth., 23 F.3d 636, 639 (2d Cir. 1994). In order to have an interest protectable under the Constitution, a person must have a "legitimate claim of entitlement to it." Bd. of Regents of State Coll. v. Roth, 408 U.S. 564, 577 (1972). "An abstract need, desire or unilateral expectation is not enough." Abramson v. Pataki, 278 F.3d 93, 99 (2d Cir. 2002).

City Defendants' Failure to Perform their Duties

Bishop and the Co-op claim they have been deprived of their constitutional rights by the City defendants' failure to properly monitor the Development and intervene when it became unsafe.

The Supreme Court discussed the Due Process Clause in a way relevant to this present case in <u>DeShaney v. Winnebago County Dept. of Social Servs.</u>, 489 U.S. 189, 195 (1989):

> The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.

The City Defendants undoubtedly have duties to the citizens of Yonkers, including Bishop and the Co-op residents, to use their authority and powers to foster the proper character of building and building projects in Yonkers and that would include vigilance as to safety. But exactly how these duties would be carried out involved the exercise of discretion and judgment, as with all phases of the carrying out of governmental affairs. See <u>Gagliardi v. Village of Pawling</u>, 18 F.3d 188, 193 (2d Cir. 1994). And the complaints surely allege that that discretion was badly carried out by the City Defendants and bad judgment--or no judgment--was exercised. But the Due Process Clause is not the basis for a court to discipline local officials for not exercising their discretion and judgment properly; it does not empower the court to

take over the management of governmental bodies. In <u>Sealed v. Sealed</u>, 332 F.3d 51, 56 (2d Cir. 2002), for example, it was held that children have no protected interest in being removed from the home of a severely abusive guardian if the removal decision is within a state official's discretion. In <u>Harrington v. County of Suffolk</u>, 607 F.3d 31 (2d Cir. 2010), a county ordinance provided that it was "the duty of the Police Department to preserve the public peace, prevent crime, detect and arrest offenders, protect the rights of persons and property and enforce all laws and ordinances applicable to the county." Nevertheless, the Second Circuit held that the parents of a driver who was killed in a motor vehicle collision did have a constitutionally protected due process property interest in an adequate police investigation of the collision. <u>Id.</u> at 34. Thus, even as to these most important of duties, there is no entitlement to competency.

<u>State-Created Danger</u>

Under the state-created danger doctrine, if the state itself facilitated and encouraged the improper activity that put a person in harm's way, the state can be liable for damages. See <u>Pena</u>, 432 F.3d at 109. To be liable, the City defendants must have willfully and affirmatively encouraged the developers to act in an unsafe manner. <u>Okin v. Village of Cornwall-On-Hudson Police Dept.</u>, 577 F.3d 415, 428 (2d Cir. 2009). While it appears that all cases in this Circuit finding a state-created danger involve acts by police officers and almost all involve

acts of private violence encouraged by police officers, there is no case holding that police involvement is a necessary element of this species of due process violation.

Nevertheless, in the view of the court, the allegations in the complaints do not rise to the level of wrongdoing necessary to invoke the state-created danger doctrine.  Again, plaintiffs allege serious mismanagement.  But, as already stated, the Due Process Clause cannot properly be used to correct, or even compensate, for such mismanagement, as regrettable as it apparently was.

Thus, since Bishop and the Co-op allege no constitutional violation, their § 1983 claims must be dismissed.

Jurisdiction

The plaintiffs' 42 U.S.C. § 1983 claims are the only federal causes of action included in their complaints.  Their other claims are brought under this court's subject-matter jurisdiction via 28 U.S.C. 1367, which provides for supplemental jurisdiction for claims arising out of the same case or controversy as a federal anchor.  However, a court "may decline to exercise supplemental jurisdiction over a claim" if the court "has dismissed all claims over which it has original jurisdiction."  § 1367(c).

With the § 1983 claims dismissed, all that remain are state law tort claims.  It is not appropriate for these claims to remain in federal court, and the court declines to keep them.

Attorneys' Fees

As a final matter, some of the private defendants in this case--the developers and their employees--have moved pursuant 42 U.S.C. § 1988 for an award of attorneys' fees from the Co-op. They claim they deserve an award of attorney's fees because the Co-op's allegations against them for due process violations are "contrary to clear and controlling law in this Circuit."

Subsection (b) of § 1988 provides that in a suit filed under § 1983, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs. The purpose of section is to encourage private enforcement of civil rights statutes, *not* to penalize losing parties. See Raishevich v. Foster, 247 F.3d 337, 344 (2d Cir. 2001). As such, prevailing defendants are held to a higher standard in seeking an award of attorneys' fees than are prevailing plaintiffs, and they may recover attorneys' fees only when the plaintiff's suit is vexatious, frivolous, or brought to harass or embarrass the defendant. Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 n.2 (1978).

The Co-op's allegations, while insufficient, are not frivolous or made in bad faith. Therefore, the developer defendants' motion for attorneys' fees is denied.

## CONCLUSION

Plaintiffs' 42 U.S.C. § 1983 claims are dismissed pursuant to Fed. R. Civ. Pro. 12(b)(6). Plaintiffs' remaining claims are dismissed pursuant to Fed. R. Civ. Pro. 12(b)(1). Certain defendants' motion for attorneys' fees is denied. The Clerk of the Court is directed to close this case.

This disposes of the motions listed as documents 91, 106, and 109 on this docket.

SO ORDERED.

Dated:  New York, New York
        March 31, 2011

_____
Thomas P. Griesa
U.S.D.J.